**Daniel Snyder, OSB No. 78385**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249

   Of Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **ANDREW ABRAHAM**, on behalf of himself, and for all others similarly situated,<br><br>**PLAINTIFFS**,<br><br>v.<br><br>**CLACKAMAS COUNTY,** and **CORIZON HEALTH, INC.**, formerly known as Prison Health Services, Inc.<br><br>**DEFENDANTS**. | Case No. 3:16-cv-1877<br><br>**CLASS ACTION COMPLAINT**<br>(Titles II and III of the ADA, Section 504 of the Rehabilitation Act of 1973)<br><br>**JURY TRIAL DEMANDED** |

   Plaintiff Andrew Abraham, individually for himself, and for all others similarly situated,

for cause of action against the above-named defendant, alleges as follows:

PAGE 1 – CLASS ACTION COMPLAINT

# I. NATURE OF THE ACTION

1.      This is an action for damages, including compensatory damages, equitable relief, including injunctive and declaratory relief, and attorney fees and costs, to redress violations of Title II of the Americans With Disabilities Act, 42 U.S.C. §12131 *et seq*. violations of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq;* and Title III of the Americans With Disabilities Act, 42 U.S.C. §12181 *et seq*.

2.      This is a class action lawsuit based on the willful and deliberate refusal of the Defendants to comply with federal laws protecting the right of the Plaintiffs, who are deaf or hard of hearing individuals in the custody or care of Defendants.

3.      Defendants have failed to comply with federal laws, including the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794 *et seq*. and the Constitution of the United States.

4.      Through their policies and practices, Defendants discriminate against deaf and hard of hearing individuals in their custody and care. Defendant Clackamas County has done this by failing to adequately assess the needs of deaf inmates for auxiliary aids during booking and after incarceration in the jail and denying deaf and hard of hearing individuals in their custody adequate and equally effective means to communicate by telephone with individuals outside of jail. Both Defendants have also failed to provide adequate access to other auxiliary aids and services, including interpretive services, necessary to accommodate deaf and hard of hearing individuals in a variety of settings including in connection with medical services. Defendant Clackamas County also refuses to provide deaf and hard of hearing individuals in the custody of Defendant Clackamas with adequate notification of important daily events and announcements. Defendant Clackamas also refuse to provide adequate interpretative services when corrections staff give directions and at

PAGE 2 – CLASS ACTION COMPLAINT

disciplinary hearings or have disciplined deaf and hard of hearing persons in custody without a hearing. Defendant Clackamas fails to display a Prison Rape Prevention Act video to deaf and hard of hearing inmates with closed captioning.

5.    As a result of Defendant Clackamas County's discriminatory policies and practices, deaf and hard of hearing individuals in Defendant's custody, care, and supervision have experienced the following harms:

(a)    Have been prevented from effectively communicating by telephone with family, friends, and attorneys outside of jail;

(b)    Have missed jail-wide announcements, jail counts, and announcements for meals and other important daily activities;

(c)    Have been excluded from participation in any education and counseling programs offered by Defendants, including those required under the terms of their sentencing;

(d)    Have been discriminated against in work assignments;

(e)    Have been denied the ability to meaning participate and defending themselves in disciplinary matters and disciplinary hearings;

(f)    Have been denied equal access to medical treatment afforded to hearing prisoners; and

(g)    Have been denied equal access to Prison Rape Elimination Act orientation video in a manner they can understand.

6.    As a result of Defendant Corizon Health Care, Inc.'s discriminatory policies and practices, deaf and hard of hearing individuals in its care and supervision have experienced the harm of having been denied equal access to medical treatment afforded to hearing prisoners.

PAGE 3 – CLASS ACTION COMPLAINT

## II. JURISDICTION

7.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 (Federal Question).

8.    This Court has jurisdiction to enter a declaratory judgment pursuant to the Declaratory Judgments Act, 28 U.S.C. 2201, *et al.*

9.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), because the claim or a substantial part of the events giving rise to the claims herein occurred or arose in this Judicial District and all of the defendants reside in this District.

## III. PARTIES

10.    Plaintiff Andrew Abraham (hereinafter "Abraham") is a citizen of the United States of America. At all times relevant, Abraham was a resident of Molalla, Clackamas County, Oregon.

11.    Abraham is a qualified individual with a disability. Abraham has a hearing disability, to wit, he is profoundly deaf. Abraham has been deaf his entire life. Abraham's primary language and preferred method of communication is through American Sign Language (ASL). ASL is different from English and Abraham's ability to communicate in English is inferior to his ability to communicate in ASL. Abraham uses video conferencing to communicate. Abraham watches television with the assistance of the closed captioning function.

12.    Abraham is bringing this action on his behalf and on behalf of a class of persons similarly situated, pursuant to the provisions of Fed. R. Civ. P. 23. This suit is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2) and (3). Plaintiff presents all deaf or hard of hearing inmates who formerly were or currently are incarcerated in the Clackamas County Jail, or who will become incarcerated in said jail in the future.

13.    Defendant Clackamas County (hereinafter "the County") is a political subdivision

PAGE 4 – CLASS ACTION COMPLAINT

of the State of Oregon. The County, through the Clackamas County Sheriff's Office, owns and operates the correctional facilities or jail in Clackamas County, Oregon, known as the Clackamas County Jail and is responsible for the inmates in said jail. The County is a public entity subject to Title II of the ADA. The County is a recipient of federal financial assistance and subject to Section 504 of the Rehabilitation Act of 1973.

14.    At all times material, Defendant Corizon Health, Inc. (hereinafter "Corizon") was and is a correctional health company that in or about March 2011 was formed in 1996 by the merger of America Service Group, Inc. and Valitas, Inc. Corizon was and is a Delaware Corporation that does business in Oregon.

15.    At all times material, Corizon providing medical and mental health services to inmates at the Clackamas County Jail under a contract with Clackamas. At all times material, Corizon was the agent of Clackamas for providing medical and mental health services to inmates at the Clackamas County Jail.

### IV. GENERAL FACTUAL ALLEGATIONS

16.    In 2004, the County, through its Clackamas County Sheriff's Office, and the United States Department of Justice were parties to a formal settlement agreement to resolve a complaint that the County violated Title II of the ADA by failing to provide effective communication with an inmate who was deaf. (See Exhibit A attached hereto) In that agreement, the County agreed to provide appropriate auxiliary aids, including qualified interpreters, and to designate an official to carry out this policy. The County also agreed to provide telephones with volume controls for prisoners with hearing loss, teletypewriters (TTYs) for prisoners with speech or hearing disabilities, and televisions with closed captioning features for use by prisoners with hearing disabilities whenever other prisoners are permitted access to television.

PAGE 5 – CLASS ACTION COMPLAINT

17.    The County has repeatedly failed to honor the terms of its agreement with the United States Department of Justice concerning Andrew Abraham and other deaf inmates.

18.    Most deaf and hard of hearing Clackamas County Jail prisoners cannot use traditional telephones to communicate with individuals outside of prison. The Federal Bureau of Prisons has recognized, '[t]telephone privileges are a supplemental means of maintaining community and family ties that will contribute to an inmate's personal development." 28 C.F.R. § 540.100. Telephone and other forms of telecommunication are very important to individuals in custody of the County because that communication fosters the family and community ties that are fundamental to motivate incarcerated individuals to improve themselves and to prepare them to make a positive transition back to civilian lift once their sentence is complete. Inmates also use the telephone to effectively communicate with legal counsel.

19.    Some jails and prisons provide deaf individuals in their custody with limited access to telecommunication devices for the deaf (TDDs). These are sometimes known as TTY. TDDs are electronic devices for text communication via a telephone lien to enable people with hearing and speech disabilities to communicate by telephone. The TDD is a basically a telephone equipped with a keyboard and a display screen. For two parties to have a direct TDD conversation, each party must have a TDD.

20.    Relay services are federally-mandated services that allow TDD users to communicate with hearing individuals who do not have TDDs. Relay services operate as follows: the party using the TDD places a call to a relay center, and a relay operator answers the call using another TDD. The caller provides the operator with the phone number of the party with whom they wish to communicate, and the operator places the call. When a hearing person answers the telephone, the relay operator explains the relays service and states the name of the caller. The

PAGE 6 – CLASS ACTION COMPLAINT

responses of the hearing person are typed by the relay operator into a TDD, and transmitted over the telephone lines to the TDD user. The call proceeds with the relay operator voicing what the TDD user types to the hearing person receiving the call, and typing what the hearing person speaks. The process can also work the other way. A hearing person who has no TDD can call a deaf individual from a traditional telephone by using the relay service.

21.    The relay service is free of cost to the users. The caller pays for only the cost of the call to the party with whom the caller wished to converse. To connect to a relay service center, an individual can either dial "711" from anywhere in the United States or dial the toll free "800" number of the relay service in the caller's locality. Accordingly, TDD relay services in Oregon may be access in two ways, by calling 711 or by calling the toll-free relay service number.

22.    For the most part, deaf individuals in the United States who use ASL, such as Abraham, avoid TDD technology when possible and now utilize video phones. However for those deaf individuals who only have access to a TDD, it is impossible to communicate with a video phone user.

23.    Some deaf and hard of hearing inmates who do not know ASL still require provision of TDDS in order to achieve access to telecommunication services.

24.    A TDD conversation takes significantly longer than a traditional voice telephone call, because it take such longer to type and read rather than to speak and listen. Defendants must provide additional time for inmates who are given access to TDD for calls.

25.    Individuals in the custody of the Defendants in the Clackamas County Jail are wholly dependent upon Defendants for medical, dental, education, mental health, employment, and religious services. Individuals in Defendants' custody in the Clackamas County Jail are also dependent upon Defendants and jail staff for all of their basic daily needs, including food, exercise,

PAGE 7 – CLASS ACTION COMPLAINT

recreation, and safety.

26.     For deaf or hard of hearing individuals who rely on American Sign Language

(ASL) as their primary form of communication, use of a qualified American Sign Language

interpreter is necessary to ensure effective communication between a deaf or hard of hearing

individual and an individual who does not sue ASL to communicate.

27.     As qualified ASL interpreter is necessary because ASL is a complete, complex

language that employs signs made with the hands and other movements, including facial

expressions and postures of the body. It is a language distinct from English. It is not simply

English in hands signals. ASL has its own vocabulary, and its own rules for grammar and syntax.

28.     Writing in English does not usually provide effective communication for a deaf

individual. English is generally considered a second language for most deaf persons who became

deaf before acquiring language. ASL is their native language. Although deaf people may acquire

English as their second language later in life, it is often past the critical period of language

acquisition. Therefore, the English reading and writing skill level of many deaf individuals,

including those incarcerated by Defendants, is generally much lower than that of hearing people.

29.     Lip-reading usually does not provide effective communication for a deaf individual

and is generally far less effective than written communication. It is extremely difficult to lip-read

English because only a small fraction of the sounds used in the language are clearly visible on the

mouth, and many sounds that are visible look identical on the lips. In addition to these difficulties

in lip-reading, the ability to accurately lip-read is affected by the speaker's facial bone structure

facial musculature, facial hair, lights, and other external factors. Moreover, even if an ASL user

were able to identify the sounds appearing on a speaker's lips, for the reason set forth above s/he

would not necessarily understand the English language or the vocabulary the speaker was using.

PAGE 8 – CLASS ACTION COMPLAINT

30.     Provision of qualified sign language interpreter services is the auxiliary service necessary to allow deaf individuals who use ASL in the County's custody and under Defendants' supervision for effective communication with jail officials, jail employees, and medical personnel.

31.     Defendants, through their policies and practices, fail to provide adequate access to sign langue interpreters for deaf individual in their custody and control and under their supervision.

32.     Defendants are responsible for the medical, psychological and mental health care of all individuals incarcerated by the County in the Clackamas County Jail.

33.     Deaf individuals who rely on ASL require sign language interpreters to communicate effectively with medical and mental health  staff.

34.     Defendants knew or should have known that deaf individuals need sign language interpreters for their medical and mental health appointments.

35.     On information and belief, deaf inmates at the Clackamas County Jail are still periodically denied interpreter services at medical and mental health appointments.

36.     The County provides educational, mental health, and counselling programs for individuals in their custody.

37.     The County does not consistently provide interpreters for such programs including for education classes, counseling, substance abuse counseling, even when such programs are required under the terms of the inmates sentences.

38.     For deaf and hard of hearing inmates who do not use ASL, other auxiliary aids and services are necessary to ensure their effective participation and understanding of Defendants' services and programs.

39.     Computer Assisted Real Time (CART) is a system that provides access to spoken

PAGE 9 – CLASS ACTION COMPLAINT

information for people with hearing loss. CART operators use a court reporting machine to input spoken text. The output of the court reporting machine is fed to a computer, which produces a text documents that corresponds very closely to the words used by the speaker. Once in the computer, the text can be displayed on a computer monitor (for one of two users) or projected onto a screen (for more users). CART is generally the system of choice for late-deafened people attending classes, meetings, and ore receiving spoken information.

40.    An Assistive Listening Device or System (ALDS) can be any one of several technologies that are used to improve the reception of speech for people with hearing loss in situations when it might be difficult or impossible to hear otherwise. ALDS can be used by people without hearing aids, with hearings aids, and with cochlear implants. Generally speaking, ALDS are especially beneficial for person who have lost some of their hearing, but are still able to understand speech if it is amplified and directed appropriately.

41.    Thus CART or ALDS is necessary to allow certain deaf or hard of hearing individuals in the County's custody and under Defendants' care and supervision to effectively understand and participate in Defendants' programs and services.

42.    Defendants, through their policies and practices, fail to provide any access to CART or ADLS for deaf or hard of hearing information in Defendants' custody and control and under Defendants care supervision.

43.    Deaf and hard of hearing inmates through the County's Jail have difficulty in accessing audit alerts and announcements available to other inmates. They also have difficulty in accessing an understanding the direction and commands of corrections officers and  medical and mental health staff.

44.    Because deaf and hard of hearing inmates have been unable to hear daily

PAGE 10 – CLASS ACTION COMPLAINT

announcements made by jail staff, such as announcements for meals, or announcement requiring inmates to report to their cells for head counts, the County should provide vibrating pagers to communicate with deaf and hard of hearing inmates.

45.    The County, through its policies and practices, fail to provide any access to pagers for deaf or hard of hearing information in Defendant's custody and control and under Defendant's care and supervision.

46.    Audio/video instruction and jail announcements can be made accessible to those with hearing impairments with captioning. Captioning can be either be open (viewable by all viewers) or closed (viewable only by those who opt to activate the caption chip within every television). Closed-captioned television enables hard of hearing and some deaf individuals the ability to read the audio dialogue of video presentations.

47.    The County, through its policies and practices, fail to provide any access to close-captioned audio/video instruction to deaf or hard of hearing inmates in Defendant's custody and control and under Defendants supervision. The County should show the mandatory Prison Rape Elimination Act video to inmates who are deaf and hard of hearing with closed captioning.

48.    Deaf and hard of hearing inmates are subjected to discipline and to disciplinary proceedings without effective communication. Although they are subject to punishment, many of these inmates do not understand the charges against them or the parameters of their punishment. Because they are denied interpreters or other assistive listening devices or other auxiliary aids of services, the inmates cannot hear the officers or proceedings are denied the ability to defend themselves when they cannot hear what is happening during the hearings.

49.    The County, through its policies and practices, fail to provide any access to interpreters or other assistive listening devices or other auxiliary aids or services, in Defendants'

PAGE 11 – CLASS ACTION COMPLAINT

custody and control and under Defendants supervision during disciplinary hearings or when discipline is imposed.

50.    The County has engaged in a pattern and practice of discrimination by denying Abraham and other deaf and hard of hearing inmates effective communication, auxiliary aids, and equal participation in programs and activities at the Clackamas County Jail including but not limited to communication with friends, family and attorneys by telephone, full enjoyment of television and recreation opportunities, and communication with corrections officers, medical staff, and other employees of the County.

51.    On October 23, 2015, Abraham was arrested and was brought to the Clackamas County Jail. On October 23, 2015, a County Deputy Classification Screener, using the online sign in of another deputy, Timothy Conger, answered "no" to all questions about Substance Abuse, Mental Health, Security Risk, Protective Custody, and Management Risk.  Under Suicide Risk, that wrote "yes" next to "Current suicide risk." Under comments, that wrote, "deaf but communicating that he may want to hurt himself, said 'so so' on suicide." This was a false statement. Abraham does not talk or say anything. The deputy failed to provide an ASL interpreter for Abraham. The screener failed to assess Abraham for his need for auxiliary aids. Then deputy then completed a Mental Health Screener Form. Without providing an ASL interpreter, the deputy wrote "yes" to "Are you thinking about killing yourself," but "no" to all other questions. The deputy wrote "no" to all questions under "Officer Observations/Impressions," except for "Other." Under "Specify," he wrote, "Deaf, Mute."

52.    On October 23, 2015, at 1:37 p.m. (1337), that screening deputy referred Abraham to medical (Corizon). At 1:42 p.m., according to the Clackamas County Jail Suicide / Special Watch Log, at 1442, he was stripped out and placed on a suicide watch. Abraham did not receive a

PAGE 12 – CLASS ACTION COMPLAINT

mental health evaluation in which he could communicate with the evaluator through an ASL interpreter.

53.     Abraham was under the care and supervision of Corizon for the next three days. He was not provided with an ASL interpreter and Corizon failed to use a remote video interpreter.

54.     On October 23, 2015, at 1:42 p.m., Corizon staff member, Nadia Petrov, RN, wrote "Interpreter used – No, Pt is deaf and mute.  Using paper sheets to communication and transfer answers to this intake.  Pt is suicidal per arresting officer." Her critical observation was that he was "Deaf, MUTE."  Nurse Petrov wrote, "Pt did not answer the following MH (mental health) questions. Stated in writing that he attempted suicide today, would not share details."  At 3:37 p.m., Dustin D. Baldwin, qmhp (sic), wrote a Suicide Watch Progress Note – Initial Visit: "Statement(s) of inmate: Pt reported SI earlier today to booking nurse. Pt acknowledged this to QMHP via writing." At 11:45 p.m. Mark Farrell, RN charted a late entry for 1800, he wrote, "Pt received Insulin 10/23/15 PM [not time noted] but failed to eat his meal . . .  Pt is deaf and mute and unable to communicate verbally." At 12:00 a.m. [sic], the mental health order by D Baldwin states that Abraham is "deaf and mute."

55.     On October 24, 2015, at 10:10 a.m. Dustin Baldwin, qmhp, wrote, "When asked via writing, 'Do you feel like hurting yourself today?' pt's reply was 'Yes, I got felony!'" Corizon failed to provide an ASL interpreter. At 7:40 p.m., Mark Farell RN wrote, "Pt does not appear to be in any distress."

56.     On October 25, 2015, at 1:13 a.m., Mark Farrell, RN wrote, "pt appears to be in no distress." At 5:43 p.m., Monique Graves, QMHP CSWA wrote, "Pt was seen by MH today in booking where he remains on suicide watch. He had been refusing his food and insulin at times during the day. He denied current suicidal ideation this afternoon, but exhibited symptoms of a

PAGE 13 – CLASS ACTION COMPLAINT

depressed mood and there remain questions about his safety when he is refusing appropriate medical care." She kept him on suicide watch. In fact, Mr. Abraham was not refusing food and medical care. He should have been provided an ASL interpreter so he could tell Ms. Graves this.

57.     Abraham is a diabetic. He did not refuse any meals. Because an ASL interpreter was not provided, he was harmed. On October 25, 2015, at 7:51 p.m., Jan Truax, RN charted that at 7:20 p.m., Mr. Abraham requested to have his blood sugar checked. Truax wrote, "When asked why he refused NPH this morning, he wrote that the nurse didn't offer it to him." No medical staff member or corrections deputy ever provided an ASL interpreter to Mr. Abraham while he was in jail so Clackamas County has not basis for claiming he refused meals.

58.     On October 26, 2015, at 8:29 a.m., Corrin Rowe, PPN, wrote that "(unknown) deputies confirmed that he refused the morning meal." Ms. Rowe did not use an ASL interpreter and confirm with Abraham  whether he had  refused a meal or needed a different meal because he is a diabetic . At 1:05 p.m., Sharon Brennan, NP, charted "Patient is a deaf mute. He is currently on suicide watch." Ms. Brennan wrote nothing about his mental health status.  At 1:12 p.m., Nadia Petrov, RN wrote, "Came to booking with S. Brennan FNP to check on Mr. Abraham at 10:20 a.m. Pt reporting no suicidality."  At 4:15 p.m., the FSBG form provides "None. Pt adamantly denies symptoms, states he will eat dinner."

59.     On October 26, 2015, at 5:00 p.m., the County's counselor, Amanda Feaver, MA, saw Abraham  to assess whether Abraham needed a referral to mental health services in the community as he was due to be released.  Feaver wrote, "Glenn and I met with Andrew in booking, he had just been ok'd for release but there was some question about suicide ideation. Andrew is deaf mute and we were unable to obtain an ASL interpreter, so we wrote questions on paper and had him write the questions down. He denied suicidal and homicidal ideation."  There is no

PAGE 14 – CLASS ACTION COMPLAINT

charting about when Clackamas County or Corizon called in an ASL interpreter. At 6:08 p.m., Monique Graves, QMHP CSWA wrote, "Pt was seen by MH today in booking on suicide watch. He denies current suicidal ideation, plan or intention. Pt is cooperative. He is deaf. He was oriented to person and place. His thoughts were organized, no evidence of delusional or paranoid thinking." She did not communicate with Mr. Abraham through an ASL interpreter.

## V. CLASS ACTION ALLEGATIONS

60.    This action is also brought as a class action under rule 23 of the Federal Rules of Civil Procedure. The County's conduct has been systematic and continuous and has affected and continues to affect large numbers of deaf individuals. Abraham brings this class action to secure redress for the County's uniform and common practice of failing to provide auxiliary aids and reasonable accommodations. The County's obligations and conduct have been uniform throughout the Class Period.

61.    Abraham seeks certification of the following opt-out class:

   a.    All persons in the state of Oregon who are or have been deaf or hard of hearing and incarcerated by the County during the Class Period.

   b.    All persons in the state of Oregon who are or have been deaf or hard of hearing and have received medical or mental health services from Corizon or its predecessor corporations while incarcerated by the County during the Class Period.

   c.    All persons in the state of Oregon who are or have been deaf or hard of hearing and have received mental health services from the County while incarcerated by the County during the Class Period.

   d.    The Class Period runs for 11 years from the filing of this Complaint.

PAGE 15 – CLASS ACTION COMPLAINT

e.     Excluded from the Class are Abraham's counsel and the assigned Judge and
       the Judge's family.

f.     The proposed Class is so numerous as to make it impractical to bring all
       Class Members before the Court.

g.     The named Plaintiff is typical of members of the class. He was a deaf
       inmate during the Class Period who was incarcerated in Clackamas County
       Jail and was not provided with auxiliary aids or reasonable accommodation.

h.     There are numerous and substantial questions of law and fact common to all
       of the Members of the Class that predominate over any individual issues.
       Included within the common questions of law and fact are:

       i.     Whether the County failed to provide auxiliary aids to Abraham and the
              Members of the Class in the form of TTY/TDD machines, ASL
              interpreters, remote video interpreters, and closed-captioning;

       ii.    Whether the County's failure to provide auxiliary aids resulted in longer
              incarceration and wait times for deaf inmates incarcerated by the
              County;

       iii.   Whether the County's conduct constitutes violations of Title II of the
              Americans with Disabilities Act;

       iv.    Whether the County's conduct constitutes violations of Section 504 of
              the Rehabilitation Act of 1973;

       v.     Whether Corizon conduct constitutes violations of Title III of the
              Americans with Disabilities Act;

       vi.    Whether Abraham and the Members of the Class have sustained

PAGE 16 – CLASS ACTION COMPLAINT

damages and the proper measure of those damages; and

    vii.  Whether Abraham and Class Members have suffered and will continue to suffer irreparable harm from Defendants' failure to comply with the law.

    i.  Abraham has no interests adverse to the interests of other Members of the Class and will fairly and adequately protect the interests of the Class.

    j.  Abraham has retained counsel experienced and competent in the prosecution of class actions and complex litigation.

    k.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Defendants refusal during the Class Period to provide auxiliary aids and reasonable accommodation to its deaf inmates, the Class Members will be unable to obtain the relief to which they are entitled.

62.    Most individual Members of the Class have little interest in or ability to prosecute an individual action due to the complexity of the issues involved in this litigation and the relatively small damages suffered by each Member of the Class.

63.    This action will allow an orderly and expeditious administration of class claims. Economies of time, effort and expense will be fostered, and uniformity of decisions will be ensured.

64.    This action should present no difficulty that would impede its management by the Court as a class action and is the best available means by which Abraham and the Members of the Class can seek redress for the harms caused to them by the County.

PAGE 17 – CLASS ACTION COMPLAINT

## VI. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**(Discrimination on the Basis of Disability in violation of Title II of the Americans with Disabilities Act—42 U.S.C. §12131 et seq.)**
**(Against all defendants by the plaintiff on behalf of himself and a class of similarly situated individuals)**

65.    This claim is brought against both Defendants by Plaintiff on behalf of himself and a class of similarly situated individuals.

66.    Abraham and Members of the Class re-alleges the prior paragraphs as though fully set forth herein.

67.    The County is a "public entity" as that term is defined in 42 U.S.C. §12131(1).

68.    Abraham and Members of the Class are qualified individuals with a disability as that term is defined in § 12131(2). Abraham has been deaf all his life. Abraham meets the eligibility requirements for participation in the programs or activities of the County which he sought.

69.    At all relevant times, the County was aware of Abraham's physical disabilities, namely that Abraham was deaf. The County had notice that an auxiliary aid was necessary for deaf and hard of hearing inmates or prisoners, including Abraham, to effectively communicate with the corrections officers at booking, to use the telephone, to talk to corrections officers, medical staff, counselors, and to fully use television during his time in jail. The County failed to assess Abraham and other deaf and hard of hearing individuals.

70.    The County is violating 42 U.S.C. § 12132 and its accompanying regulations by committing the following discriminatory acts or practices:

a.    Failing to provide an ASL interpreter or appropriate auxiliary aids for communication;

PAGE 18 – CLASS ACTION COMPLAINT

b. Failing to allow Abraham and members of the class to use a pen and paper to communicate their needs;

c. Failing to provide a TTY that functioned so that Abraham and Members of the Class can make telephone calls;

d. Failing to provide closed-captioned audio/video presentations as alleged above;

e. Failure to provide videophones;

f. Failing to provide other auxiliary aids such as remote video interpreting;

g. Intentionally refusing to provide Abraham and Members of the Class with an equally effective method of communication as is provided to other inmates in the Clackamas County Jail;

h. Maintaining a pattern or practice of discrimination against Abraham and all other deaf inmates;

i. Intentionally failing to accommodate Abraham and Members of the Class's disability by refusing to provide an ASL interpreter of other appropriate auxiliary aids;

j. Maintaining an environment of hostility toward Abraham and Members of the Class based on his disability and toward other deaf inmates; and

k. Intentionally denying Abraham and Members of the Class participation in programs or activities in the Clackamas County Jail that is equal to the participation of non-disabled inmates.

71. The County's conduct showed deliberate indifference to Abraham and Members of the Class's rights because the County knew that Abraham requested auxiliary aids for

PAGE 19 – CLASS ACTION COMPLAINT

communication, disregarded his requests without making an effort to determine if it was possible

to accommodate his request, and denied multiple requests for accommodations over the course of

several weeks.

72.     As a result the County's unlawful actions, Abraham suffered and continues to

suffer humiliation, distress, and impairment of his personal dignity and right to be free from

discrimination or interference with his statutory rights.

73.     Abraham and Members of the Class are entitled to equitable relief and

compensatory damages in an amount to be determined at trial. Abraham's damages are not

expected to exceed $150,000. Abraham reserves the right to amend this amount prior to or during

trial, as the evidence requires.

74.     Abraham and Members of the Class are entitled to injunctive relief as against the

County, including but not limited to an order prohibiting the County from continued

discrimination against people with disabilities by refusing to provide adequate ASL interpreters

and other auxiliary aids to deaf persons and an order mandating full compliance with Title II of the

ADA.

75.     Abraham and Members of the Class are entitled to a declaration that the County

violated Title II of the ADA.

76.     To the extent any amount awarded to Abraham and Members of the Class is for

damages occurring prior to the entry of judgment, Abraham and Members of the Class are entitled

to an award of prejudgment interest at the legal rate from the date the damage occurred until the

date of judgment.

77.     Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Abraham and Members of the Class

are entitled to an award of attorney's fees, expert witness fees and costs incurred.

PAGE 20 – CLASS ACTION COMPLAINT

78.     Abraham and Members of the Class are entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## SECOND CLAIM FOR RELIEF
**(Discrimination on the Basis of Disability in Violation of the Rehabilitation Act of 1973, Section 504—29 U.S.C. § 701 *et seq.*)**
**(Against both defendants by the plaintiff on behalf of himself and a class of similarly situated individuals)**

79.     Abraham and Members of the Class re-alleges the prior paragraphs as though fully set forth herein.

80.     This claim is brought against both Defendants by Plaintiff on behalf of himself and a class of similarly situated individuals.

81.     Abraham and Members of the Class are qualified individuals with disabilities or handicap under the Rehabilitation Act because he/they are deaf.

82.     Abraham and Members of the Class were otherwise qualified to receive the benefit of the services made available to inmates of the Clackamas County Jail.

83.     At all times material, the County and Corizon were and are recipients of federal financial assistance for theirs programs and activities.

84.     Defendants' actions and omissions as described above violated Abraham and Members of the Class's rights under the Rehabilitation Act by excluding them or denying them the benefits of the County's services solely because of their disability.

85.     Defendants conduct showed deliberate indifference to Abraham and Members of the Class's rights because Defendants knew that they requested auxiliary aids for communication, disregarded their requests without making an effort to determine if it was possible to accommodate his request, and failed to provide an adequate auxiliary aid in lieu of a qualified interpreter.

86.     Abraham and Members of the Class sustained emotional distress and damages due

PAGE 21 – CLASS ACTION COMPLAINT

to Defendants violation of the Rehabilitation Act.

87.     Pursuant to Section 505 of the Rehabilitation Act, Abraham and Members of the

Class are entitled to compensation for their damages and an award of attorney fees and costs.

### THIRD CLAIM FOR RELIEF
**(Discrimination on the Basis of Disability in Violation of Americans with Disabilities
Act—Title III: 42 U.S.C. §12181 et seq.)
(Against Corizon by the plaintiff on behalf of himself and a class of similarly situated
individuals)**

88.     Abraham re-alleges all relevant paragraphs as though fully set forth herein.

89.     Corizon is a place of public accommodation as that term is defined in 42 U.S.C.

§12181(7)(F).

90.     Abraham is a "qualified individual with a disability" as that term is defined in

§ 12131(2).

91.     At all relevant times, Corizon was aware of Abraham's physical disabilities.

92.     Corizon has damaged Abraham in violation of 42 U.S.C. § 12132 and its

accompanying regulations by committing the following discriminatory acts or practices: failing to

provide an in person ASL interpreter or to use remote video interpreting when evaluating and

providing care to Abraham for his physical and mental health needs.

93.     Abraham is entitled to injunctive relief, including, but not limited to, an order

prohibiting Corizon from continued discrimination against people with disabilities and an order

mandating full compliance with Title III of the ADA.

94.     Abraham is entitled to a declaration that Corizon violated Title III of the ADA.

95.     Pursuant to 42 U.S.C. §§ 1988 and 2000e-5, Abraham is entitled to an award of

attorney's fees, expert witness fees, and costs incurred.

PAGE 22 – CLASS ACTION COMPLAINT

## FOURTH CLAIM FOR RELIEF
### (Discrimination on the Basis of Disability in Violation of ORS 659A.142)
### (Against Corizon by the plaintiff on behalf of himself and a class of similarly situated individuals)

96.     Abraham re-alleges all relevant paragraphs as though fully set forth herein.

97.     Corizon is a place of public accommodation as that term is defined in ORS 659A.400.

98.     Abraham is an "individual with a disability" as that term is defined in ORS 659A.104.

99.     At all relevant times, Corizon was aware of Abraham's physical disabilities.

100.    Corizon has damaged Abraham in violation of ORS 659A.142 by committing the following discriminatory acts or practices: failing to provide an in person ASL interpreter or to use remote video interpreting when evaluating and providing care to Abraham for his physical and mental health needs.

101.    Abraham is entitled to injunctive relief, including, but not limited to, an order prohibiting Corizon from continued discrimination against people with disabilities and an order mandating full compliance with ORS 659A.142.

102.    Abraham is entitled to a declaration that Corizon violated ORS 659A.142.

103.    Pursuant to ORS 659A.885, Abraham is entitled to an award of attorney's fees, expert witness fees, and costs incurred.

## VII. PRAYER FOR RELIEF

Abraham and the Members of the Class seek judgment against the County, and request that this Court enter an Order as follows:

A.     Accepting jurisdiction of this case and declaring that the County violated Title II of

PAGE 23 – CLASS ACTION COMPLAINT

the ADA;

B.      Accepting jurisdiction of this case and declaring that the County and Corizon violated Section 504 of the Rehabilitation Act of 1973;

C.      Accepting jurisdiction of this case and declaring that Corizon violated Title II of the ADA;

D.      Injunctive and other equitable relief as the Court deems appropriate, including but not limited to, an Order requiring the County to provide qualified American Sign Language interpreters and auxiliary aids, to establish polices to accommodate deaf people, and requiring the County to appoint and train ADA coordinators;

E.      To require the County and Corizon to establish a policy and procedure for ensuring deaf persons in custody will have access to ASL interpreters while incarcerated, use of other auxiliary aids such as access to paper and writing instruments, access to functioning TTYs that are compatible with the telephones available to inmates, and closed-captioned television;

F.      A sum which will fully compensate Abraham and Members of the Class for their noneconomic damages in a sum that is just as determined by a jury;

G.      A sum which will fully compensate Abraham and Members of the Class for their economic damages in a sum that is just as determined by a jury;

H.      Abraham and Members of the Class's costs and disbursements incurred herein;

I.      Abraham and Members of the Class's attorney fees; and

J.      For such other and further relief as the Court may deem just and equitable.

PAGE 24 – CLASS ACTION COMPLAINT

Abraham demands a trial by Jury, on behalf of himself, and for all others similarly situated.

DATED September 23, 2016

**Law Offices of Daniel Snyder**

_/s/ Daniel Snyder_
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
John Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff

PAGE 25 – CLASS ACTION COMPLAINT