THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANDREW ABRAHAM, on behalf of
himself, and for all others similarly
situated,
      Plaintiffs,

v.

CORIZON HEALTH, INC.,

      Defendant.

No. 3:16-cv-01877-PK

**FINDINGS AND RECOMMENDATION**

**PAPAK, Magistrate Judge:**

Plaintiff Andrew Abraham, on behalf of himself and other similarly situated deaf persons, brings this putative class action against Defendant Corizon Health, Inc., asserting claims under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; Oregon anti-discrimination law, Or. Rev. Stat. § 659A.142; and the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff claims that Defendant, which provides health services at the Clackamas County Jail, discriminates against persons who are deaf or hard of hearing, denying equal access to medical treatment by failing to provide American Sign Language interpreters or other accommodations. Plaintiff seeks

Page -1-  FINDINGS AND RECOMMENDATION

declaratory, injunctive, and monetary relief.

This court has dismissed Plaintiff's claims under the ADA and Oregon statutes. *See* Order, ECF No. 19. Defendant now moves for summary judgment on Plaintiff's claim under the Rehabilitation Act, arguing that Plaintiff has not shown that Defendant receives federal financial assistance, which is a requirement for such a claim. I recommend granting Defendant's motion for summary judgment because Defendant was at most an indirect beneficiary of federal funds received by Clackamas County, not the intended recipient of them.

## BACKGROUND

### I. Plaintiff's Incarceration at the Clackamas County Jail

Plaintiff has been "profoundly Deaf" since birth. Proposed First Am. Compl. ¶ 10, ECF No. 31-1 (Am. Compl.). Plaintiff prefers to communicate in American Sign Language (ASL), and he is less proficient in English.

Defendant is a privately held correctional health care corporation. Under a contract with Clackamas County, Defendant provided medical and mental health services to inmates at the Clackamas County Jail (the Jail) while Plaintiff was in custody there.

Plaintiff was arrested in October 2015, and taken to the Jail. At intake, the Jail did not provide an ASL interpreter for Plaintiff. A corrections officer determined that Plaintiff was a suicide risk, stating, "deaf but communicating that he may want to hurt himself, said 'so so' on suicide." Am. Compl. ¶ 36. Plaintiff alleges that this statement is false because he "does not talk or say anything." Am. Compl. ¶ 36.

Plaintiff was referred to Defendant's care. He was stripped and placed on suicide watch. Defendant did not provide Plaintiff with an ASL interpreter to assist him during mental health

Page -2- FINDINGS AND RECOMMENDATION

evaluations. During the three days Plaintiff was in custody at the Jail, he was not provided with an ASL interpreter.

## II. Defendant's Contract With Clackamas County

Defendant has been the sole provider of medical, dental, and mental health services at the Jail since at least 2011. Jeff Sholey, Defendant's "vice president corporate controller and assistant treasurer," states that in October 2015, when Plaintiff was in custody at the Jail, Defendant "provided medical services at the [Jail] under a contract with [Clackamas County]. The only parties to that contract are [Defendant] and Clackamas County." Sholey Decl. ¶ 3. Plaintiff notes that Defendant's contract with Clackamas County requires that Defendant comply with all applicable federal, state, and local laws and ordinances, specifically including the Rehabilitation Act. Pl.'s Resp. 6 (citing Burgess Decl., Ex. C, at 19).

Clackamas County pays Defendant each month for medical services. Sholey Decl. ¶ 4. For October 2015, Clackamas County paid Defendant $271,558.45 for medical services provided. Def.'s Reply 3. For the 2015-16 fiscal year, Clackamas County paid Defendant a total of about $3.25 million. *Id.*

"Payment for services provided by [Defendant] under this contract, come directly from the County and the fees for those services were established via a competitive bid process in 2011." Sholey Decl. ¶ 5. Defendant "receives no federal financial assistance or federal payments of any kind related to its operations in Clackamas County. [Defendant] receives no payments for its operations in Clackamas County beyond the payments received from the County." *Id.* ¶¶ 6,7.

## III. Federal Assistance to Clackamas County

Clackamas County receives federal financial assistance through the State Criminal Alien

Page -3-  FINDINGS AND RECOMMENDATION

Assistance Program (SCAAP), which pays state and local governments for costs incurred incarcerating qualified, undocumented criminal aliens. 8 U.S.C. § 1231(I). Section 1231(I) provides,

> (I) Incarceration
>
> (1) If the chief executive officer of a State (or, if appropriate, a political subdivision of the State) exercising authority with respect to the incarceration of an undocumented criminal alien submits a written request to the Attorney General, the Attorney General shall, as determined by the Attorney General--
>
> (A) enter into a contractual arrangement which provides for compensation to the State or a political subdivision of the State, as may be appropriate, with respect to the incarceration of the undocumented criminal alien; or
>
> (B) take the undocumented criminal alien into the custody of the Federal Government and incarcerate the alien.
>
> (2) Compensation under paragraph (1)(A) shall be the average cost of incarceration of a prisoner in the relevant State as determined by the Attorney General.

*Id.* The statute provides that funds "distributed to a State or political subdivision of a State, including a municipality, may be used only for correctional purposes." *Id.* § 1231(i)(6).

Clackamas County received $33,225 in SCAAP funds for fiscal year 2015. Sramek Decl., Ex. 1, at 12, ECF No. 39-1. Lee Eby, the Jail's commander, testified at a deposition that the County uses the SCAAP money "for wages for personnel." Burgess Decl., Ex. A, at 15, ECF No. 37-1. Eby testified that to receive SCAAP money, Clackamas County would notify the federal agency distributing SCAAP funds of the County's "staffing wages," and the federal agency would then calculate the amount of the grant based on "how many individuals you had in you custody and the amount of time that they spent in your custody." Eby Depo. at 14. Eby testified that when the County receives SCAAP funds, it deposits them into a general bank

account and designates the funds for the Jail's operations fund. Eby Depo. at 15.

As Plaintiff notes, medical services, like wages, are one of the line-item categories in the County's operations fund. Plaintiff also notes that medical services are an allowable use of SCAAP funds. Defendant responds that other line-items in the operation fund include computer supplies, uniforms, utilities, and many other expenses.

## LEGAL STANDARDS FOR SUMMARY JUDGMENT MOTIONS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may not credibility determinations or weigh evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## DISCUSSION

The issue is whether Defendant is covered by the Rehabilitation Act because of the federal SCAAP funds provided to Clackamas County for incarcerating undocumented criminal aliens. The Rehabilitation Act prohibits discrimination based on disability "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a claim under the Rehabilitation Act, a plaintiff must show "(1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir.1997) (emphasis,

footnote, and citations omitted). Here, Defendant's motion for summary judgment concerns only element (4), whether Defendant receives federal financial assistance.

Plaintiff concedes that Defendant "does not directly receive payments from the federal government for the services it provides at the Jail," but argues that Defendant is covered by the Rehabilitation Act because Defendant receives federal financial assistance "indirectly." Pl.'s Response 3. Plaintiff argues that SCAAP funds are federal funds dispersed to Clackamas County to pay for corrections costs associated with housing undocumented "criminal aliens," and that some of the corrections costs for which Clackamas County receives SCAAP funds are for medical and mental health services provided by Defendant. Plaintiff argues that because the County pays Defendant from the same bank account in which the County deposits SCAAP funds, Defendant "receives federal financial assistance for the program and services in question." Pl.'s Response 5-6.

Defendant argues that Plaintiff has not cited any decisions supporting his argument that a defendant's receipt of payments from a common "operations fund" is sufficient to impose liability on a third party under the Rehabilitation Act. Defendant cites *U.S. Department of Transportation v. Paralyzed Veterans of America*, 477 U.S. 597 (1985) (*Paralyzed Veterans*), *superseded by statute on other grounds*, Air Carrier Access Act of 1986, 49 U.S.C. § 41705(a)(1). In *Paralyzed Veterans*, the plaintiffs contended that the Rehabilitation Act covered airlines because the airlines benefitted from federal grants to airport operators to promote airport development and planning. 477 U.S. at 604-05. The Court disagreed, concluding that "Congress made it explicitly clear that these funds are to go to airport operators. Not a single penny of the money is given to the airlines. Thus, the recipient for purposes of § 504 is the *operator* of the

Page -6- FINDINGS AND RECOMMENDATION

airport and not its users." *Id.* at 605. The Court stated, "By limiting coverage to recipients, Congress imposes the obligations of § 504 [of the Rehabilitation Act] upon those who are in a position to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds. In this case, the only parties in that position are the airport operators." *Id.* at 606. The Court held that courts interpreting coverage under the Rehabilitation Act should not "follow [] the aid past the recipient to those who merely benefit from the aid." *Id.* at 607. The Court emphasized that "the key is to identify the recipient of that assistance." *Id.*

I conclude that the reasoning of *Paralyzed Veterans* applies here because like the airlines at issue in *Paralyzed Veterans*, Defendant here "merely benefit[s] from the aid." *Id.* Clackamas County, not Defendant, is the designated recipient of the SCAAP federal grant money. Like the airlines in *Paralyzed Veterans*, here Defendant cannot choose whether it will accept or reject SCAAP funds; only Clackamas County can make that choice. The Court in *Paralyzed Veterans* emphasized the "contractual nature of the receipt of federal moneys," that is, the recipient of federal funds chooses to accept money as a quid pro quo for complying with the Rehabilitation Act. *Id.* at 605.

Plaintiff also notes that the contract between Clackamas County and Defendant requires that Defendant comply with all laws, specifically the Rehabilitation Act. Defendant argues that Plaintiff, who is not a party to the contract, has no legal standing to contend that Defendant has breached the contract. I agree with Defendant that the remedy for Plaintiff would be to bring a Rehabilitation Act claim against Clackamas County.

Defendant also argues that because Clackamas County pays it as compensation for medical services, the Rehabilitation Act does not apply here because it "covers only the

Page -7- FINDINGS AND RECOMMENDATION

recipients of federal assistance and not the recipients of compensatory payments for services." I agree. Payments are treated as federal financial assistance if they include a subsidy but not if they are merely compensatory. *Jacobson v. Delta Airlines, Inc.*, 742 F2d 1202, 1210 (9th Cir 1984). The court must "focus . . . on the intention of the government [and] determine whether the government intended to provide assistance or merely to compensate." *Id.*

I conclude that the SCAAP funds paid to Clackamas County do not show that Defendant is covered by the Rehabilitation Act as a recipient of federal assistance. Defendant is entitled to summary judgment on Plaintiff's Rehabilitation Act claim.

## CONCLUSION

Corizon's Motion for Summary Judgment, ECF No. 24, should be GRANTED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 14th day of November, 2017.

Honorable Paul Papak
United States Magistrate Judge